Good morning, your honors. My name is Hugh Fleischer and I represent Dr. Stephen J. Kaniadakis. And I would respectfully suggest, notwithstanding the fact that you have an unpublished opinion in the appeal of this matter, we feel under your circuit rule 36-3 that it's relevant to the doctrine of the law, the case, in terms of the defendant appellant in that case, the direct appeal from Dr. Kaniadakis, in which he was raising the question of restitution. And this court found that the defendant, quote, waived any challenges to restitution amount when he failed to object to the second amended pre-sentence report within the time period set by the court, citing several cases. And that's at tab 3. But we feel that is a specific determination that was made by this court that goes directly to the question of whether Dr. Kaniadakis was being served properly under Strickland by his attorney. And we believe under the evidence that we've cited and the briefs that we've filed, that he did not. Just in the case of the restitution, at the heart of Dr. Kaniadakis' case, as he thought, the billing of his office to the insurance companies. This was evidence that he had provided, as he said in his testimony in the 2255 hearing that was held below, to his attorney well prior to trial. And yet, notwithstanding Rule 16b-1, in which there is to be a requirement of providing the documents and information that the defendant has, as well as the government doing the same, his trial counsel simply failed to do that. And ultimately, there was a confrontation, in fact, in the court about this bulk of documents that Dr. Kaniadakis brought into the courtroom and the government asked for a preclusion of those documents and the court agreed without prejudice, allowing trial counsel to raise any points that he felt were appropriate as to why some of that evidence would be, in fact, allowed. But there was no showing. There was no trial counsel to do that. And Dr. Kaniadakis, frankly, feels that the billing of the insurance company, which was central to his entire practice and was integrally involved in everything that was involved in this case, was never, in fact, allowed to be shown to the jury as a result of that. Moreover, his counsel failed to ensure a precautionary instruction when the government was making a major attempt to show criminal propensity. And that's intertwined with all of this 404B matters, but there was a time when the court made a showing outside of the jury if there was going to be any attempt to indicate that Dr. Kaniadakis had attempted to forge a patient's name on a document. And notwithstanding that order from the court, the government did, in fact, try to elicit from a witness named that Dr. Kaniadakis had apparently forged her name. And yet, notwithstanding an order from the court to that effect, trial counsel did not object to that line of questioning. So we feel that under the U.S. v. Rappi case of this circuit, in which it requires that there be an absolute intertwined with the underlying offense for this, for other acts, that the principal evidence of the government, which was found under these coding charges, were indeed, we believe, other acts under 404B. And we don't feel that the government met that test of Rappi in that case, which was a recent case when this case was tried from 97. And the fact is that the trial counsel simply did not represent Dr. Kaniadakis in assuring that those other acts' evidence was, in fact, held to that strict standard. He did not object to those. And throughout this whole proceeding, it did, in fact, result in a conviction of Dr. Kaniadakis, which we feel, under all of these authorities, should be reversed. This denial of the petition for habeas should be reversed, and he should, in fact, receive a new trial. And we thank you, Your Honors. Okay. At this point, I think we have your argument well in hand. Let's hear from the government, and then we'll give you a chance to respond. Very well. Thank you. Thank you. Thank you. Good morning. May it please the Court. My name is Dan Cooper. I'm an assistant United States attorney here in the District of Alaska. I am the lawyer who tried the case below back in December of 1999. The case has come before this Court kind of in a convoluted manner, and there is, at this time, I think still pending, a motion filed with a supplemental motion by Mr. Fleisher, representing Dr. Kaniadakis, under what he captioned a Rule 28J motion as opposed to a 28J letter advising the Court of Authorities. And, in fact, the 28J motion, both the motion and the supplemental motion, submitted to the Court evidence, that is, certain identification documents that were marked at Trial 201, 202, and 203, I believe, and in the supplemental certain documents. If I can just take a moment, while the Court hasn't ruled on those, I would submit to the Court that the 28J motion, the initial motion filed before the Court, those items which are attached to his motion were items marked for identification under Rule 403.18 or 803.18, learned in treatises and were testified, portions were read to the jury, witnesses testified about them, but they didn't go into the jury box, or, excuse me, the jury room for the jury to consider. The second, if the Court looks at the documents that are attached, and they appear to be billings and explanations of benefits, they're dated in 1998 and 1999, and as the Court knows from reading the pursuant proceeding indictment, this case alleges conduct between 1994 and 1997. So the new documents that he's submitting on the supplemental 28J motion are well outside the indictment and have no bearing on the matter here before the Court. With respect to this appeal of Judge Singleton's order, denying a 2255, where we are is a variety of issues are raised. One is kind of a sentencing argument under Blakely, and the Government would submit that the Court's recent hearing, excuse me, opinion in Sharp v. Payne No. 0236164 decided and filed on July 8th of this year, decides that issue in a 2254, and therefore it should apply here as well, and these cases regarding sentencing should not be applied retroactively to Dr. Kanye Dacus. Are you saying we should extend charge to also Booker retroactive issue? Yes, Your Honor. The other things in this case, if we go back to the trial, the trial in this case concerned three things. Going for surgical facility fees when there was no surgical facility, unbundling a Morton's neuroma procedure and building a Morton's neuroma and a neuroplasty, and unbundling a hammertoe procedure, saying there's a straightened hammertoe and I'm also going to bill for a lengthening of the tendon. We're going to double up and we're going to triple up and get a lot of money. That's what the case was about. And Mr. Bryson, looking at this, started off very early on, and you can tell from reading the pre-trial conferences, it's even in the papers, this case is about Dr. Kanye Dacus' intent. That's the trial strategy. That's the tactic. We're going to talk about he didn't intend to defraud anybody. So when you look at that tactical decision and you look at what happened in trial, everything that Mr. Bryson did worked to that advantage. The Rule 16B, his failure to disclose, as he said in the pre-trial conference on December 1st, essentially, look, all the documents have come to us from the government. I've got the stuff from the government. Anything I'm going to bring up, I have to balance between the defendant's Fifth Amendment rights and his other tactical rights at trial, and if I think it's important to bring something in, I'm going to make an application to bring it in. And Judge Singleton, being the fair trial judge, is likely going to let him come in. But it's my job as a government lawyer, when he comes in with a bag and says, I haven't shown it to anybody yet, to say, wait, there's a Rule 16 violation. And the Ninth Circuit has said over and over and over, district court judges should enforce their pre-trial orders. And as you can also tell from the some of the pre-trial conferences, I get kind of excited about that, because I'm a government lawyer, and I'm always held to fulfilling the orders of the court. The defense counsel, it often seems to us, aren't. But Mr. Bryson, as he said in his testimony at the evidentiary hearing on the 2255, he's not scared of me. He likes to argue with me. So if he has something that he hasn't produced to me before, he's going to bring it up, and we'll let the court decide it at the time. Expert witnesses really don't come to play in a case like this. Dr. McCannia-Dakis testified very succinctly in his cross-examination why he billed for two procedures when he did the mortis neuroma surgery, and why he billed for two procedures when he did the hammer toe. He said in the hammer toe, I make one cut up here in the joint, and then I make another cut back down here in the metatarsal joint. And when I do that, I've got two incisions. So I'm entitled to bill for the two holes, essentially. It's two separate procedures in his mind. In the mortis neuroma case, on bundling, he says, well, I go in there between the third and fourth toe in the metatarsal something joint, and I find that inflamed nerve, and I bring it out, and I bill for a neuroplasty, because I'm removing that neuroma. And then when I get the pathology report back, and it says it's a mortis neuroma, I bill for the mortis neuroma, because that's what I've done. I've done the last bit of my cross-examination with Dr. Candia Dacus. We went through and we showed him that he was billing for both the mortis neuroma and the neuroplasty on the same day, and the pathology report comes in six days to three weeks later. And what this points up, Your Honor, is that Dr. Candia Dacus lied to this jury over and over and over and over again, and that's what convicted him. Tracy Golimba, the so-called forgery testimony enlisted by myself. When you look at the pretrial case, excuse me, pretrial conference hearing, I had a form that I thought had a forgery on it that related to a worker's compensation claim. When you look at Tracy Golimba's testimony on recross, or excuse me, redirect, what I'm talking about when I'm showing her two forms, I'm showing her two informed consent forms. One of them had her regular signature on it, and the other had kind of a different looking signature. It was signed by her, according to her testimony, the day she was in the little room that Dr. Candia Dacus used for a surgical facility when she was under anesthesia. And it related to a toe, her little toe on her right foot. Because Dr. Candia Dacus billed the insurance company for a hammer toe on the little toe on her right foot. She doesn't have any holes on her right foot. She has no scars, no surgery done on the little toe on her right foot. And that's what her testimony was about. And what we were talking about there was, you know, does Dr. Candia Dacus tell the truth when he bills an insurance company? Was it counting the indictment? No. And he gets people to sign informed consents, in that case, when they're under the influence of anesthesia for something that wasn't done. He was papering his record. Now, another reason, just taking the Tracy Golemba case, is when Dr. Candia Dacus is cross-examined on that surgery, reported surgery on that little toe, he says, I made a stab incision, I went in and I fixed the little toe. His op report says, and he's cross-examined on this, he made a one and a half centimeter incision. Not a one and a half millimeter, but one and a half centimeter incision. Went in, did a condolectomy, cleaned up the head of the bones, removed material, sewed it back up to show him the x-rays. There's no condolectomy performed on that toe. But he insisted to the jury that he had done that work. That is why Dr. Candia Dacus was convicted. Dr. Candia Dacus was convicted because he lied over and over and over to the jury about the work that he did. A coding expert, Dr. Candia Dacus gets all confused about the global procedure and the global CPT. Exhibits 86 and 87, if the court looks at those and they're made part of the record, in this case several times, unfortunately for the court, were introduced by a witness Kathy Hammett, who was a coding clerk for Dr. Candia Dacus. And the purpose was to show that she had shown Candia Dacus, Dr. Candia Dacus, examples of what's included in global procedural codes. If you'll look at those two exhibits, they don't have anything to do with the hammer toe. They don't have anything to do with the extension of a Morton's neuroma. They deal with removal of a toenail and debridement of the matrix of a toenail. They were put in for a very limited purpose. They're not referred to at all in argument. So when Dr. Candia Dacus says, my lawyer was ineffective because he didn't get learned treatises in to support my position, and he points to those as an example, it doesn't compute, as we would say in the law. Judge Singleton probably said it best in his order denying the motion for a 2255 petition, when he said, the expert that Dr. Candia Dacus is looking for probably does not exist except in Dr. Candia Dacus's mind. Your Honor, there's just no way in this case that Mr. Bryson was ineffective and his conviction should stand. Thank you. Thank you. Any response? Well, other than Mr. Cooper's closing remark, we heard very little about trial counsel for Dr. Candia Dacus. We can't have it both ways to say that this bag of documents was something that trial counsel was perfectly willing to put in, had it been in any reason responsible evidence for the defendant, but failed to do so. And indeed, he was specifically precluded from putting in the evidence that he believed, and still believes to this day, is the critical evidence to be provided to the jury. That being, the billing practices that he, in fact, followed in his office to the insurance companies that were, in fact, paying for the services for respective patients. Counsel, can I ask you a question? Sure. When did the doctor's lawyer, trial lawyer, first see those documents? Dr. Candia Dacus testified, your honor, in the 2255 hearing that he provided those documents to his trial counsel well before... What is his trial counsel? What his trial counsel testified to? His, well, his trial counsel testified that he reviewed the matter and didn't believe that it actually... I'm asking that, when did his trial counsel... I don't know that he was asked that specific question, your honor, as to precisely when... We'll rely on the record. My remembrance of the record was he just barely got them before trial. He didn't have a chance to review them. That's my... Now, I may be wrong. I'll check the record. It's all... Well, the fact is Dr. Candia Dacus was out of custody during that time, and had custody of these documents and his testimony, which I don't believe was challenged in a responsible way, was to the effect that he, in fact, had given his attorney those documents well in advance of the time of trial. And so we think that is really a central point here and one that has been ignored by the government in terms of the important efficacy of the documents that he was attempting to put in, which directly related to the care and treatment he was giving to patients and the amounts that he was charging to the insurance companies and the billing practices that were being followed, which he feels would show that, indeed, he was following a reasonable and lawful process in the way in which this matter was being handled. How was the amount of restitution determined? The amount of restitution was determined by the probation office as a proposal in the pre-sentence report, and there was a specific schedule for, of course, as there always is, for any objections or response to the pre-sentence report, and there was no response made to, by the defendant, to the restitution figure that was made. Was that reviewed on the original appeal? It was reviewed, but as I indicated, the court found that Dr. Kanedakis had waived his right to object to the restitution by virtue of not having objected to the pre-sentence report in a timely manner, which, of course, was his trial counsel's responsibility, and therefore it was not, in fact, reviewed. Well, he was present. He was asked by the, at the sentencing ceremony, he was asked by the judge if he had anything to say, wasn't he? He was. He gave the extended allocution, as a matter of fact, Your Honor. And did he question the restitution then? Well, let me just say this. I know that there was a unilateral amendment of the restitution by the court, but I don't recall specifically whether Dr. Kanedakis testified about the restitution. Okay. Okay. Thank you, Your Honor. Thank you. Thank you. Thank you both for arguing and appearing today. I think the argument was, in fact, useful. The case of the United States v. Kanedakis is now submitted for decision. The next case on the argument calendar is Evergreen International Airlines v. United States. And I'm speaking, this is not even a precatory statement, but I noticed we've got 20 minutes per side. I'm not sure the legal issues here are sufficiently complicated to merit it. So let's see how we go. But if you use your full 20 minutes, you do, but I'm not sure you're going to need them.
judges: Goodwin, Brunetti, W. Fletcher